UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CHADLEN DWAYNE SMITH,<br><br>       Plaintiff,<br><br>v.<br><br>JUSTIN BANGS, C. WADE, J.<br>PROCTOR, MATTHEW SIMMONS,<br>LESLIE DUNCAN, JOHN DOES I-X;<br>and JANE DOES I-X,<br><br>       Defendants. | Case No. 2:22-cv-00426-DCN<br><br>**MEMORANDUM DECISION AND<br>ORDER** |

Plaintiff Chadlen Dewayne Smith, a prisoner in the custody of the Idaho Department of Correction, is proceeding pro se and in forma pauperis in this civil rights action. Plaintiff's claims arose before Plaintiff was incarcerated.

Plaintiff has been allowed to proceed on claims, under 42 U.S.C. § 1983, based on the First, Fourth, and Fourteenth Amendments. Plaintiff alleges that Defendant Police Officer Justin Bangs unreasonably seized Plaintiff, and retaliated against him for video recording on public property by threatening him with a trespass arrest, on October 2, 2020. Plaintiff also claims that Defendant Police Officers C. Wade and J. Proctor retaliated

MEMORANDUM DECISION AND ORDER - 1

against Plaintiff, in June and July 2021, by writing police reports and requesting a summons for Plaintiff, and that Assistant City Attorney Matthew Simmons retaliated against Plaintiff by pursuing criminal charges against him. Finally, Plaintiff asserts that Defendants Wade, Proctor, and Simmons maliciously prosecuted Plaintiff by pursuing the charges. The charges were later dismissed. *See Init. Rev. Order*, Dkt. 9, at 4–5.

Plaintiff also originally brought a claim against Kootenai County Commissioner Leslie Duncan, based on Duncan's statement to police officers that Duncan wished to pursue charges against Plaintiff. *Id*. at 4. However, on January 26, 2024, the Court dismissed Plaintiff's claims against Defendant Duncan. Dkt. 30 at 8 ("At most, the Complaint plausibly alleges only that Duncan pursued criminal charges that—at least to Duncan's knowledge—were properly initiated by police officers. Therefore, Plaintiff has failed to state plausible § 1983 claims against Defendant Duncan.").

The remaining Defendants—Bangs, Wade, Proctor, and Simmons—have now filed a Motion for Summary Judgment. Defendants argue that (1) Defendants did not violate Plaintiff's First, Fourth, or Fourteenth Amendment rights; (2) even if Plaintiff's rights were violated, Defendants are entitled to qualified immunity; and (3) Defendant Simmons is entitled to absolute prosecutorial immunity. *See generally Memo. in Supp*., Dkt. 37-1.

The Motion is ripe for the Court's consideration. Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record and that oral argument is unnecessary. *See* D. Idaho Loc. Civ. R. 7.1(d). Accordingly, and for the reasons that follow, the Court will grant Defendants' Motion for Summary Judgment.

MEMORANDUM DECISION AND ORDER - 2

## STANDARD OF LAW GOVERNING SUMMARY JUDGMENT

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). It is not "a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.

In resolving a summary judgment motion, the Court must consider the facts in the light most favorable to the non-moving party, unless the non-moving party's version of the facts is "blatantly contradicted by the record[] so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007). If such a blatant contradiction exists, then there is no "genuine" dispute as to that fact. *Id*.

The moving party bears the initial burden to show that each material fact cannot be disputed. Material facts are those "that might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment ...." *Id*. at 247–48. Rather, a case will survive summary judgment only if there is a *genuine* dispute as to a *material* fact.

To show that the material facts are not in dispute, the moving party may cite to particular parts of materials in the record or show that the nonmoving party is unable to

produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B). Where, as here, the party moving for summary judgment would not bear the burden of proof at trial, that party may prevail simply by "pointing out to the district court[] that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325.

If the moving party meets this initial responsibility, the burden then shifts to the non-moving party to establish that a genuine dispute as to any material fact does indeed exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Instead, "there must be evidence on which [a] jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

The Court must consider "the cited materials" in considering a motion for summary judgment, but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (internal quotation marks omitted). Rather, the "party opposing summary judgment must direct [the Court's] attention to specific, triable facts." *So. Ca. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

That is, "if a defendant moving for summary judgment has produced enough evidence to require the plaintiff to go beyond his or her pleadings, the plaintiff must counter by producing evidence of his or her own." *Butler v. San Diego Dist. Attorney's Office*, 370 F.3d 956, 963 (9th Cir. 2004). If the plaintiff fails to produce evidence, or if the evidence

produced is insufficient, the Court "is not required (or even allowed) to assume the truth of the challenged allegations in the complaint." *Id*.

If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may consider that fact to be undisputed. Fed. R. Civ. P. 56(e)(2). The Court must grant summary judgment for the moving party "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

Affidavits or declarations "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The Ninth Circuit has "repeatedly held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment." *Beyene v. Coleman Sec. Services, Inc.*, 854 F.2d 1179, 1182 (9th Cir. 1988) (internal quotation marks omitted). Authentication, required by Federal Rule of Evidence 901(a), is not satisfied simply by attaching an exhibit to an affidavit or declaration. *Id.* The affidavit or declaration must contain "testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the [exhibit]." *Id*. Additionally, statements in a brief, unsupported by the record, cannot be used to create a dispute of fact. *Barnes v. Indep. Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the parties. Although all reasonable inferences which can be drawn from the evidence must be drawn in the light most favorable to the non-moving party, *T.W. Elec.*

*Serv., Inc.*, 809 F.2d at 630–31, the Court is not required to adopt unreasonable inferences from circumstantial evidence, *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

In cases involving pro se inmates, courts liberally construe the pleadings and briefs and "should avoid applying summary judgment rules strictly." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). However, although pro se inmates are exempted "from *strict* compliance with the summary judgment rules," they are not exempted "from *all* compliance." *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018). In opposing a motion for summary judgment, a pro se inmate must submit at least "some competent evidence," such as a "declaration, affidavit, [or] authenticated document," to support his allegations or to dispute the moving party's allegations. *Id.* at 872, 873 (upholding grant of summary judgment against pro se inmate because the "only statements supporting [plaintiff's] … argument are in his unsworn district court responses to the defendants' motion for summary judgment and to the district court's show-cause order").

## FACTUAL BACKGROUND

This section includes facts that are undisputed and material to the resolution of the issues in this case. Where material facts are in dispute, the Court has included Plaintiff's version of facts, insofar as that version is not blatantly contradicted by clear documentary or video evidence in the record. *See Scott*, 550 U.S. at 380.

On October 2, 2020, Plaintiff was recording a video on his phone in Kootenai County at 451 N. Government Way, Coeur d'Alene, Idaho. The building located at that address is the administration building for Kootenai County. The Kootenai County campus includes the county courthouse and justice building. The buildings on campus close to the

public at 5:00 p.m., *Decl. of Justin Bangs* ("*Bangs Decl*."), Dkt. 3, ¶ 7, with the possible exception of the Department of Motor Vehicles ("DMV"), which may have been open until 5:30 p.m., *Decl. of Chadlen Smith* ("*Smith Decl*."), Dkt. 48-2, ¶ 7. Though Plaintiff states in his Declaration that Google showed other buildings closing at 5:30 p.m., this is inadmissible hearsay. *See* Fed. R. Evid. 801, 802.

At about 5:25 p.m., the Coeur d'Alene Police Department received a complaint that an individual at the Kootenai County campus, later identified as Plaintiff, was recording government employees, and the vehicles of government employees, as they were leaving work. The complaint stated that the individual was in areas where it was uncommon to see people at that time of day and that the individual was acting suspiciously. *Id*. ¶¶ 4, 9.

Defendant Officer Justin Bangs responded to the complaint. Bangs's bodycam footage, properly authenticated and attached as Exhibit 1 to Bangs's Declaration, shows the encounter between Plaintiff and Bangs on October 2, 2020.[1]

Bangs approached Plaintiff at approximately 5:30 p.m., when all of the buildings, including the DMV, were closed to the public. Plaintiff matched the description of the subject of the complaint, and Bangs asked to speak with him. Plaintiff initially ignored Bangs but then asked if the conversation was consensual. Bangs stated it was. *Ex. 1 to Bangs, Decl*., at 00:34. Plaintiff asked for Bangs's name and badge number, and Bangs told Plaintiff his name was Officer Bangs. Bangs asked Plaintiff for identification. Plaintiff did

---

[1] Though Plaintiff in his Declaration relies on two YouTube videos he states that he created, they are not properly authenticated, and are therefore inadmissible, because Plaintiff has merely attached them to this Declaration. *See Beyene,* 854 F.2d at 1182.

not provide identification, asking, "For what crime?" *Bangs Decl.* ¶ 11.

Bangs stated that he was trespassing Plaintiff from the grounds. Plaintiff again refused to give Bangs his name, stating, "It doesn't matter [what my name is]. I haven't committed any crime." *Id*. ¶ 9. Bangs stated Plaintiff was trespassing, and Plaintiff responded that he was on public property and that Bangs was not authorized to trespass Plaintiff from the property. *Ex. 1 to Bangs Decl.* at 01:06. Bangs told Plaintiff he was informed that Plaintiff "had been observed walking around video recording people who were leaving the building, that it had been reported that his conduct was suspicious, and that he was no longer permitted to be on the property."[2] *Bangs Decl.* ¶ 9; *see also Ex. 1 to Bangs Decl.* at 01:06 to 01:14. Plaintiff stated, "No one's asked me to leave." Bangs responded, "I am." Plaintiff agreed to leave. *Bangs Decl.* ¶ 9.

As Plaintiff was leaving, Bangs followed and again stated he needed Plaintiff's name; Plaintiff told Bangs he did not have the authority to require Plaintiff to give his name. *Id*. ¶ 10. Bangs stated he needed Plaintiff's name because, if Plaintiff came back, he would be arrested.

Plaintiff stopped walking, turned to Officer Bangs, and asked Bangs if he was being detained. What Bangs said at this point is unclear. It sounds like Bangs may have said, "No," though that is not obvious from the audio. *Ex. 1 to Bangs Decl.* at 01:45 to 01:49. Bangs went on to state again that he needed to identify Plaintiff because, if Plaintiff came back, he would "go to jail." *Id*. at 01:48 to 01:52. As Plaintiff again began walking away,

---

[2] On this issue, Bangs's bodycam footage belies Plaintiff's allegation that Bangs approached him "solely" because Plaintiff was recording a video. *See Memo. in Opp*., Dkt. 48-1, at 4.

Bangs continued to follow. Bangs stated, "You can video me all you want, but you gotta keep going." *Id*. at 02:05 to 2:09. Plaintiff left the property.

Bangs did not cite Plaintiff for any crime. *Bangs Decl*. ¶ 17. Though Plaintiff never provided identification to Officer Bangs, another officer later confirmed that he was familiar with Plaintiff and that Plaintiff's name was Chadlen Smith. *Id*. ¶ 18.

On June 21, 2021, Plaintiff returned to the Kootenai County campus. He recorded a video of "a few things" inside and outside the DMV and then left after about ten minutes. *Compl*. at 6.

The next day, Officer Wade received a call that Plaintiff had trespassed at the DMV. *Id*. at 6. Wade's initial police report stated Plaintiff had committed trespass. Wade stated in a supplemental report that Plaintiff had "violated the previous trespass issued on 10/02/20." *Id*. On June 23, 2021, Officer Proctor reviewed Wade's report. On July 21, 2021, Proctor requested a summons from the prosecutor's office. Proctor "completed the summons paperwork and submitted it to [Proctor's] supervisor so they could send it to the prosecutor" for potential charges against Plaintiff. *Id*. at 8.

Assistant Coeur d'Alene City Attorney Simmons filed a trespass charge against Plaintiff based on Wade's and Proctor's reports. The charge was dismissed on November 5, 2021. *Id*. at 10.

## DISCUSSION

For the reasons that follow, the Court concludes that Defendants have met their initial burden of showing they are entitled to judgment as a matter of law, and Plaintiff has

not come forward with admissible evidence sufficient to raise a genuine dispute of material fact. Accordingly, Defendants are entitled to summary judgment.

## 1.    Standards of Law Applicable to Plaintiff's Claims

Plaintiff brings his claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). A defendant causes a constitutional deprivation within the meaning of § 1983 "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Whether a constitutional deprivation has occurred does not end the inquiry, however. The doctrine of qualified immunity protects state officials from personal liability for on-the-job conduct so long as the conduct is objectively reasonable and does not violate a plaintiff's clearly established federal rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). True to its dual purposes of protecting state actors who act in good faith and redressing clear wrongs caused by state actors, the qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (internal quotation marks omitted).

A qualified immunity analysis consists of two prongs: (1) whether, "[t]aken in the light most favorable to the party asserting the injury, ... the facts alleged show the

[defendant's] conduct violated a constitutional right"; and (2) whether that right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *modified by Pearson v. Callahan*, 555 U.S. 223 (2009). A district court may exercise its discretion to analyze the qualified immunity prongs in either order, and the resolution of the second prong may obviate the need to address the first. *Pearson*, 555 U.S. at 236. If a defendant meets their initial burden on summary judgment, then only upon showing that there was a violation of a constitutional right *and* that the right was clearly established can a plaintiff avoid summary judgment on qualified immunity grounds.

To determine whether the right at issue was clearly established, a court turns to Supreme Court and Ninth Circuit law existing at the time of the alleged act. *Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996). In the absence of binding precedent, the district courts should look to available decisions of other circuit and district courts to ascertain whether the law is clearly established. *Id.* The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201.

If a court determines that the constitutional right at issue was, in fact, clearly established, the court must then consider whether—*despite* the clearly-established nature of the right—a reasonable prison official still "could have believed the [challenged] conduct was lawful." *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995). A prison official "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that *any* reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014) (emphasis added). "The relevant, dispositive inquiry is whether it would be clear to

a reasonable officer that his conduct was unlawful *in the situation he confronted*." *Saucier*, 533 U.S. at 202 (emphasis added).

Application of qualified immunity is appropriate where "the law did not put the [defendant] on notice that his conduct would be clearly unlawful." *Id*. at 201. For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand" that his conduct violates that right. *Id*. It is not necessary that the "very action in question has previously been held unlawful, but it is to say in the light of preexisting law the unlawfulness must be apparent" to the official. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). (internal citation omitted).

For an official to be denied qualified immunity, "existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018). That is, to show that a right is clearly established, a plaintiff must "*identify a case* where an officer acting under similar circumstances as defendants was held to have violated" the right at issue. *Sharp v. Cnty. of Orange*, 871 F.3d 901, 911 (9th Cir. 2017) (alteration omitted).

When a § 1983 defendant makes a properly supported motion for summary judgment based on qualified immunity, the plaintiff has the obligation to produce evidence of his own. The Court may not simply assume the truth of the challenged factual allegations in the complaint. *Butler v. San Diego Dist. Attorney's Office*, 370 F.3d 956, 963 (9th Cir. 2004).

2.      **Defendant Simmons Is Entitled to Summary Judgment on the Basis of Absolute Immunity**

Plaintiff claims that Defendant Simmons retaliated against, and maliciously prosecuted Plaintiff, by filing criminal charges against him.

Prosecutors have absolute immunity for any actions taken in the performance of an integral part of the criminal judicial process. *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). Such actions include initiating and pursuing a criminal prosecution, *id.* at 410, preparing and filing charging documents, *Kalina v. Fletcher*, 522 U.S. 118, 129 (1997), participating in hearings, and "making false or defamatory statements in judicial proceedings," *Burns v. Reed*, 500 U.S. 478, 490 (1991). Absolute prosecutorial immunity even extends to "the knowing use of false testimony at trial, the suppression of exculpatory evidence, and malicious prosecution." *Milstein v. Cooley*, 257 F.3d 1004, 1008 (9th Cir. 2001); *see Broam v. Bogan*, 320 F.3d 1023, 1029–30 (9th Cir. 2003).

The conduct of which Plaintiff complains—Simmons's decision to file criminal charges against Plaintiff—is inarguably an integral part of criminal judicial process. *Kalina*, 522 U.S. at 129. Therefore, Simmons is entitled to absolute immunity from Plaintiff's claims and must be granted summary judgment.

3.      **Defendant Bangs Is Entitled to Summary Judgment Because (1) Bangs Did Not Violate Plaintiff's Constitutional Rights, and (2) Even If He Did, a Reasonable Officer in Bangs's Situation Would Not Have Known that His Conduct Violated Plaintiff's Rights**

   A.      ***Defendant Bangs Did Not Violate Plaintiff's Right to Be Free from Unreasonable Seizures Because Plaintiff Was Not "Seized" within the Meaning of the Fourth Amendment***

Plaintiff claims that Defendant Officer Bangs unconstitutionally seized him on

MEMORANDUM DECISION AND ORDER - 13

October 2, 2020, when Bangs told Plaintiff to leave and then followed him off the Kootenai County campus.

The Fourth Amendment protects against unreasonable searches and seizures, including seizures of a person. Seizures "must be founded upon an objective justification." *United States v. Mendenhall*, 446 U.S. 544, 551 (1980). Even a "brief detention short of traditional arrest" constitutes a seizure of a person. *Id*. However, not all contact between a citizen and a police officer "involves 'seizures' of persons. Only when [an] officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may [a court] conclude that a 'seizure' has occurred." *Id*. at 552. That is, "a person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained." *Id*. at 553.

As Officer Bangs's bodycam footage plainly shows, Plaintiff was never seized on October 2, 2020. Once Bangs asked Plaintiff to leave, Plaintiff said he would. And Plaintiff did leave. Not once did Bangs order Plaintiff to stop walking. It was Plaintiff who, at one point, stopped walking to ask Bangs if he was being detained. *Ex. 1 to Bangs Decl*. Bangs did not detain Plaintiff in any way. That Plaintiff and Bangs continued to speak to one another while Bangs followed Plaintiff off the property does not constitute a seizure within the meaning of the Fourth Amendment.

Plaintiff has not rebutted Defendants' evidence that Bangs did not seize Plaintiff on October 2, 2020. There simply is no evidence establishing that Bangs restrained Plaintiff's freedom of movement in any way. *See Mendenhall*, 446 U.S. 553. Accordingly, Defendant Bangs is entitled to judgment as a matter of law on Plaintiff's Fourth Amendment claim.

MEMORANDUM DECISION AND ORDER - 14

**B.** **Defendant Bangs Did Not Violate Plaintiff's Clearly Established First Amendment Rights**

Plaintiff's retaliation claim involving the October 2, 2020, trespass threat from Defendant Bangs is not based on Plaintiff's recording of the encounter with Officer Bangs. Rather, it is based on his pre-encounter recording of employees leaving the office and of employees' vehicles—the recording that *precipitated* the encounter between Plaintiff and Bangs.

The protections of the First Amendment extend "only to conduct that is inherently expressive, such that it is intended to be, and would reasonably be understood to be, communicative." *Project Veritas v. Schmidt*, 125 F.4th 929, 946 (9th Cir. 2025) (internal quotation marks omitted). If the conduct is not expressive, then it is not protected by the First Amendment. Additionally, the government may place content-neutral time, place, and manner restrictions on speech on public places if they are "narrowly tailored to serve a significant governmental interest[] and leave open ample alternative channels for communication of the information." *Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 827 F.3d 1192, 1197 (9th Cir. 2016) (internal quotation marks omitted).

Video recording can be a form of constitutionally protected speech. *Project Veritas*, 125 F.4th at 942 ("It is well established that audio recordings and audiovisual recordings are generally entitled to First Amendment protection."). For example, the First Amendment protects "the right to record law enforcement officers engaged in the exercise of their official duties in public places." *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1044 (9th Cir. 2018).

But not *every* recording is protected by the First Amendment. *Project Veritas*, 145 F.4th at 944 ("We do not suggest that any conduct related in some way to speech creation, however attenuated, is necessarily entitled to First Amendment protection."). Rather, the recording must relate to a "matter[] of public concern." *Id*.; *see also Askins*, 899 F.3d at 1044 ("The First Amendment protects the right to photograph and record *matters of public interest*.") (emphasis added).

A matter of public concern is one that "helps citizens to make informed decisions about the operation of their government." *Roe v. City & Cnty. of San Francisco*, 109 F.3d 578, 585 (9th Cir. 1997) (internal quotation marks omitted). It does *not* include information that "would be of no relevance to the public's evaluation of the performance of governmental agencies." *Id*. (internal quotation marks omitted). In other words,

> the content of the communication must be of broader societal concern. The focus must be upon whether the public or community is likely to be truly interested in the particular expression, or whether it is more properly viewed as essentially a private grievance. This standard does not require the communication to be of global importance or vital to the survival of Western civilization. To deserve First Amendment protection, it is sufficient that the speech concern matters in which even a relatively small segment of the general public might be interested.

*Id*. (internal quotation marks and citations omitted). Whether a recording shows a matter of public concern "must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Id*. (internal quotation marks omitted).

The First Amendment includes the right to be free from retaliation for exercising constitutional rights. A plaintiff asserting a retaliation claim must show the following:

(1) that the plaintiff was engaged in constitutional protected activity, such as speech or expressive conduct; (2) as a result of the exercise of protected activity, a defendant state actor took an adverse action against the plaintiff; (3) the adverse action "would chill a person of ordinary firmness from continuing to engage in the protected activity"; and (4) "there was a substantial causal relationship between the constitutionally protected activity and the adverse action." *Boquist v. Courtney*, 32 F.4th 764, 775 (9th Cir. 2022) (internal quotation marks omitted). "[B]are allegations" of a retaliatory motive are insufficient to support a retaliation claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 n.4 (9th Cir. 1985); *see also Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) ("We have repeatedly held that mere speculation that defendants acted out of retaliation is not sufficient.").

  i.  Plaintiff's Recording on October 2, 2020, Was Not Protected by the First Amendment Because It Did Not Involve a Matter of Public Concern

Defendants have met their burden of showing that Plaintiff's recording of the outside of Kootenai County buildings, of government employees leaving work at the end of the business day, and of government employees' vehicles does not involve a matter of public concern because these things would not be relevant "to the public's evaluation of the performance of governmental agencies," would not help "citizens to make informed decisions about the operation of their government," and would be of little to no interest to the public. *Roe*, 109 F.3d at 585 (internal quotation marks omitted). The recording did not show any government employee in the exercise of their official duties, and the recording was made after almost all of the buildings on the campus were closed to the public.

Plaintiff has not rebutted Defendants' evidence on this issue. Accordingly, the Court

concludes as a matter of law that Plaintiff's October 2, 2020 recording did not involve a matter of public concern. It was therefore not protected by the First Amendment, the first prong of Plaintiff's retaliation claim fails, and Defendant Bangs is entitled to summary judgment on this claim.

>       ii.      Even Assuming Defendant Bangs Violated Plaintiff's Right to Be
>                Free from Retaliation, the Contours of the Right Were Not
>                Sufficiently Clearly Established to Deny Bangs Qualified Immunity

Assuming, without deciding, that Plaintiff's recording did involve a matter of public concern, and assuming Plaintiff can satisfy the remaining prongs of the retaliation analysis, it would establish only that Bangs violated Plaintiff's right to be free from retaliation. It would not answer the next necessary question—whether that right was so clearly established that any reasonable officer in Defendant Bangs's particular situation would have known that his conduct violated that right. *See Plumhoff*, 572 U.S. at 779.

Defendants have pointed out that the Supreme Court and the Ninth Circuit do not appear to have considered a case similar to this one—where the conduct alleged to be protected by the First Amendment is *not* a recording of a public event or protest or of any government employees in the exercise of their official duties. In response, Plaintiff cites *Fordyce v. City of Seattle*, 55 F.3d 436 (9th Cir. 1995).

In *Fordyce*, the plaintiff made an audiovisual recording of a public protest and of police officers at the protest. He was assaulted by police officers and arrested under a Washington statute prohibiting nonconsensual recordings of private conversations. The Ninth Circuit held that a genuine issue of material fact existed as to whether the plaintiff was assaulted "in an attempt to prevent or dissuade him from exercising his First

Amendment right *to film matters of public interest*." *Id*. at 439 (emphasis added). Though the court went on to hold that the officers were entitled to qualified immunity with respect to the plaintiff's arrest, *id*. at 439–40, *Fordyce* confirms that a recording of a public protest or demonstration, and of police officers exercising their official responsibilities at that demonstration, involves a matter of public concern.

Here, however, Plaintiff was not recording a public demonstration or any government official exercising their official duties. He was filming the outside of county buildings, government employees' vehicles, and government employees as they were leaving work. *Fordyce* certainly did not clearly establish that a recording like Plaintiff's— undertaken after most of the property was closed to the public, recording employees *leaving* work and not engaging in their official responsibilities—involved a matter of public concern protected by the First Amendment.

Another case cited by Plaintiff is *Askins*, 899 F.3d 1035. As discussed in that case, the Department of Homeland Security, Customs and Border Patrol had a policy of requiring individuals seeking to film or take photographs at ports of entry to obtain prior authorization. *Id*. at 1040. The plaintiffs in the case had photographed border patrol agents at ports of entry engaging in their official duties. The plaintiffs were detained and questioned and the photographs deleted. The Ninth Circuit reversed the district court's dismissal of the plaintiff's First Amendment claim because further factual development was necessary to determine whether the areas the plaintiffs were recording were public fora traditionally open to the public for First Amendment activity. *Id*. at 1044–46.

The photographs at issue in *Askins* were of border patrol agents exercising their

official duties, and the record was not sufficiently factually developed to determine what types of restrictions were permissible, given the areas that were being photographed. Here, Plaintiff was not recording public officials engaged in their official responsibilities—the county employees were, in fact, leaving their offices—and the admissible evidence proves Plaintiff was recording after the buildings on the Kootenai County campus, other than the DMV, were closed to the public. *Askins* did not clearly establish that Bangs's conduct violated Plaintiff's rights.

Plaintiff also relies on the non-controlling case of *Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011). In that case, the First Circuit considered whether the arrest of an individual who recorded police officers arresting and using excessive force on another man violated the First and Fourth Amendments. The court held that video recording "police carrying out their duties in public" was protected by the First Amendment as involving a matter of public concern. *Id*. at 82. The court went on to note that the "the right to film is not without limitations … and may be subject to reasonable time, place, and manner restrictions." *Id*. at 84.

As with *Fordyce* and *Askins*, however, recording police officers arresting an individual is undoubtedly recording them as they are engaged in their official duties and is nothing like Plaintiff's video recording. Plaintiff was not recording any public official or government employee exercising their duties. Once again, he was recording the outside of buildings, government employees' vehicles, and employees leaving work—after most of the buildings were closed to the public. *Glik* does not clearly establish that Plaintiff's recording involved a matter of public concern such that any reasonable officer in Bangs's

MEMORANDUM DECISION AND ORDER - 20

position would have known it.

Finally, Plaintiff cites *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155 (2015). But *Reed* stands for the unremarkable proposition that an ordinance imposing more stringent restrictions on signs with a certain message than on other signs is a content-based restriction subject to strict scrutiny under the First Amendment. *Id*. at 164–65. It says nothing about whether it was clearly established, at the time of Bangs's actions, that a recording like Plaintiff's involved a matter of public concern.

As this survey of case law reveals, an officer in Bangs's particular situation could have reasonably believed that Plaintiff's recording was not relevant "to the public's evaluation of the performance of governmental agencies," would not help the public "make informed decisions about the operation of their government," and was not "likely to be truly interest[ing]" to the public. *Roe*, 109 F.3d at 585 (internal quotation marks omitted). Put simply, plaintiff has not identified a case "where an officer acting under similar circumstances as [Bangs] was held to have violated" the right to be free from retaliation. *Sharp*, 871 F.3d at 911. Therefore, at the time of Bangs's actions, existing precedent had not placed the constitutional question "beyond debate." *Kisela*, 584 U.S. at 104 (2018). Consequently, Bangs is entitled to qualified immunity from Plaintiff's claims.

### 4.    Defendants Wade, Proctor, and Simmons[3] Did Not Violate Plaintiff's Right to Be Free from Retaliation

Plaintiff's remaining retaliation claims stem from Officer Wade's reports following

---

[3] As explained earlier, Simmons is entitled to absolute immunity. Alternatively, for the reasons stated in this section, Plaintiff's retaliation claims fail in any event.

a June 2021 report that Plaintiff had trespassed, Officer Proctor's June 2021 review of Plaintiff's case and July 2021 submission of the case to the prosecutor, and Assistant City Attorney Simmons's decision to prosecute Plaintiff for trespass.

Defendants have met their burden of pointing out that Plaintiff cannot produce admissible evidence to support the intent element of a retaliation claim. Plaintiff offers no evidence in support of the conclusory statements in the Complaint that these Defendants acted with a retaliatory motive. Because Plaintiff offers nothing more than bare allegations that Defendants Wade, Proctor, and Simmons acted in retaliation, see *Rizzo*, 778 F.2d 532 n.4, these Defendants are entitled to summary judgment on Plaintiff's retaliation claims.

## 5.    Defendants Wade, Proctor, and Simmons[4] Did Not Violate Plaintiff's Right to Be Free from Malicious Prosecution

Plaintiff claims that Defendants Wade, Proctor, and Simmons maliciously prosecuted him for trespass.

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. Malicious prosecution, however, generally "does not constitute a deprivation of life, liberty or property without due process of law and, therefore, is not cognizable" under § 1983. *Cline v. Brusett*, 661 F.2d 108, 112 (9th Cir. 1981). There is an exception to this general rule for prosecutions pursued "with malice and without probable cause" and undertaken "for the purpose of denying [the plaintiff] equal protection or another specific constitutional right." *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1054 (9th Cir. 2009) (internal quotation

---

[4] *See* n. 3, *supra*.

MEMORANDUM DECISION AND ORDER - 22

marks omitted).

Defendants have pointed out that there is no evidence to suggest that, in citing, investigating, and prosecuting Plaintiff for trespass, Defendants Wade, Proctor, or Simmons acted with malice and for the purpose of denying Plaintiff a specific constitutional right. Because Plaintiff has not come forth with any admissible evidence to support his conclusory allegations of malice and specific purpose, Defendants are entitled to judgment as a matter of law on Plaintiff's malicious prosecution claims.

### C.    *The Doe Defendants*

Finally, Plaintiff asserts claims against unidentified "Doe" Defendants. However, Plaintiff never moved to amend his Complaint to identify these Defendants. Therefore, Plaintiff's claims against the Doe Defendants fail as a matter of law.

### CONCLUSION

For the foregoing reasons, Defendant Bangs is entitled to summary judgment on Plaintiff's Fourth Amendment claim because Plaintiff was not seized within the meaning of the Fourth Amendment. Defendant Bangs is entitled to summary judgment on Plaintiff's retaliation claim because (1) Plaintiff did not record a matter of public concern, and (2) even if he did, the law was not sufficiently clearly established that a reasonable officer in Bangs's position would have known that he was violating Plaintiff's right to be free from retaliation.

Defendants Wade, Proctor, and Simmons are entitled to summary judgment because they did not violate Plaintiff's right to be free from retaliation or malicious prosecution, and Defendant Simmons in entitled to absolute immunity in any event.

MEMORANDUM DECISION AND ORDER - 23

## ORDER

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Dkt. 37) is

GRANTED, and this entire action is DISMISSED with prejudice.

DATED: September 4, 2025

_____

David C. Nye
Chief U.S. District Court Judge